# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW WEHRLE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17-cv-5451 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Matthew Wehrle ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") to deny his application for disability benefits. The parties have filed cross-motions for summary judgment. For the following reasons, Plaintiff's motion is denied [dkt. 11], the Commissioner's motion is granted [dkt. 20], and the Administrative Law Judge's decision is affirmed.

## BACKGROUND

### I. Medical History

On July 21, 2010, Plaintiff was working as a bricklayer, when he suffered a back injury while at work, causing back pain and radiculopathy into his right leg. (R. 276.) An MRI of Plaintiff's back in August 2010 showed annular disc bulging at L4-L5 and central disc herniation causing non-compressive foraminal stenosis. (R. 278.) In the first half of 2011, Plaintiff attempted to treat his back pain with non-invasive options such as steroid injections. (R. 282-285.) When the injections ceased to provide Plaintiff with the desired relief, he sought a second opinion from Dr. Edward J. Goldberg, a spinal surgeon. (R. 285-86, 325.) Dr. Goldberg recommended a surgical fusion at L5-S1, which he performed in August 2011. (R. 267, 325.) Following the surgery,

Plaintiff regularly followed up with Dr. Goldberg. As of October 11, 2011, Plaintiff was "doing extremely well," but was not cleared to go back to work. (R. 319.) On November 28, 2011, Plaintiff reported muscle tightness and occasional numbness in his right foot, and Dr. Goldberg cleared Plaintiff to work with a 10-pound lifting restriction and with occasional bending, squatting, and ground work. (R. 317.)

As part of his recovery from back surgery, Plaintiff also engaged in a physical therapy regimen. As part of his physical therapy, Plaintiff would sometimes undergo a functional assessment. As of January 6, 2012, Plaintiff demonstrated the ability to perform work at the "Medium Demand Level;" specifically, he was able to lift between 43 and 81 pounds, depending on the specific type of lifting, but had functional deficits with kneeling, crawling, and squatting. (R. 358.) However, Plaintiff could not perform his previous work as a bricklayer because that job required the ability to perform at the "Medium to Heavy Physical Demand Level." (*Id.*)

One week later, Plaintiff followed up with Dr. Goldberg. Plaintiff reported that he was doing well and felt "much stronger after completing regular physical therapy." (R. 317.) He also reported pain in his lower back with "trunk twisting," and occasional numbness and tingling down his right leg, "but this is much less frequent." (R. 314.) Dr. Goldberg recommended that Plaintiff complete a work conditioning program, and released him to work at the light capacity level. (R. 317.)

Plaintiff completed the work conditioning program in February 2012. (R. 346.) At the time of completion, Plaintiff was able to work at the medium exertion level, and could carry 70 pounds s distance over 100 feet, and overhead press 60 pounds for six repetitions. At Plaintiff's visit with Dr. Goldberg a few days later, Dr. Goldberg opined that Plaintiff could return to work at a medium exertional level, with limited squatting and waist-bending; Dr. Goldberg found that this was maximum medical improvement for Plaintiff. (R. 313.)

2

On June 6, 2012, Plaintiff had another functional assessment evaluation. (R. 338.) Plaintiff demonstrated the ability to perform at the medium to heavy exertion level, including occasionally lifting 66-93 pounds. Once again, Plaintiff was not cleared to perform his previous work as a bricklayer. (*Id*.) Plaintiff demonstrated the ability to stand for 30 minutes, and sit for 63 minutes. (R. 344.)

There is no medical record of Plaintiff having any additional back pain until May 2014, when he presented with back pain to family nurse practitioner Mary Kennedy, FNP. (R. 471.) Plaintiff reported that his back pain had worsened over the past year, and that he was experiencing burning and numbness in his leg and foot. (*Id*.) According to Plaintiff, he had "never really been pain free since his surgery." (*Id*.) Ms. Kennedy ordered an MRI of Plaintiff's lumbar spine, which revealed mild to moderate spondylosis at L4-L5. (R. 578.)

In June 2014, Plaintiff began treatment with Jason Peterman, PA-C, for Plaintiff's back pain, which he reported as causing stabbing and shooting pain in his leg. (R. 492.) Mr. Peterman found that Plaintiff had sacroiliac joint dysfunction, and recommended diagnostic injections to his SI joint with interventional radiology. (R. 494.) At his follow-up with Mr. Peterman, Plaintiff had the same complaints and reported that his injections had provided relief for one hour. (R. 489.) Mr. Peterman recommended that Plaintiff attempt to resolve his issues through physical therapy, after which they could consider "minimally invasive sacroiliac joint fusion" if Plaintiff did not get relief from the physical therapy. (R. 491.) In September 2014, Plaintiff reported "no benefit" from the physical therapy, and Mr. Peterman recommended the aforementioned joint fusion. (R. 485-87.) The procedure was performed in late October 2014. (R. 544-45.) Following the procedure, Plaintiff followed up regularly with the surgeon who had performed it, and showed some improvement in his symptoms. (R. 518-22.) Plaintiff also did physical therapy in an attempt to recover. Although the surgeon noted in January 2015 that Plaintiff's pain was "clearly better," the contemporaneous

physical therapy records show that he continued to suffer from radiculopathy, back pain, limited range of motion in his lumbar spine, and an abnormal gait. (R. 660-62.)

Plaintiff also sought treatment for his right shoulder.[1] He reported the issue to Ms. Kennedy in October 2013, who then referred him to an orthopedic specialist. (R. 287, 456.) At his initial appointment with orthopedist Dr. Michael J. Corcoran, Plaintiff exhibited full range of motion in his shoulder, but pain and tightness "with the extremes of flexion and abduction," and "strong positive impingement sign." (R. 288.) He received an injection in his shoulder and was told to follow up in four weeks. (*Id*.) An MRI from November 2013 showed "mild arthrosis of the acromioclavicular joint." (R. 297.) After several follow-up visits showing no improvement in his shoulder, Dr. Corcoran performed a right shoulder arthroscopy in January 16, 2014. (R. 406.) On February 24, 2014, Plaintiff reported to Dr. Corcoran's physician's assistant that his shoulder pain was gone and that physical therapy had been a "huge help." (R. 292.)

## II.   Opinion Evidence

There are several medical opinions in the record, both from treaters and state agency medical consultants. As for the state medical consultants, their findings were mostly similar. Each found that Plaintiff was able to perform work at the light exertional level, *see* 20 C.F.R. § 404.1567, with a variety of postural, manipulative, and environmental modifications. (R. 70-74, 88-92.) The Administrative Law Judge ("ALJ") gave great weight to those opinions to the extent they limited Plaintiff to light work, provided for "generous" postural limitations, and limited Plaintiff's exposure to hazards such as ladders, ropes, and scaffolds. (R. 19-20.) However, the ALJ assigned no weight to any limitations on Plaintiff's ability to use his right arm, because the ALJ found that the Plaintiff's right should injury lasted less than 12 months. (*Id*.) Additionally, the ALJ found

---

[1]   Additionally, Plaintiff has had problems with his left hip. On April 1, 2014, Plaintiff told Ms. Kennedy that he had pain in his left hip; an MRI revealed a partial tear of the gluteus medius tendon and left trochanteric bursitis. (R. 501.) Plaintiff did physical therapy for his hip with mixed results. However, this hip issue is not before the Court on this appeal.

4

there was "no basis in the medical records" for the medical consultants' findings that Plaintiff be limited in exposure to extreme cold and wetness. (R. 20.)

At the reconsideration level, a psychological consultant found that Plaintiff had mild restrictions in activities of daily living, social functioning, and maintaining concentration, persistence, and pace, and no episodes of decompensation. (R. 86.) The ALJ gave great weight to that opinion because the findings were consistent with the findings of Plaintiff's psychological evaluation on September 3, 2014. (R. 476-78.)

Plaintiff's physical therapist, Dana Masching, also provided a Musculoskeletal Defects Report, which stated that Plaintiff's pain was too severe to allow him to work in a competitive environment, even in a sedentary capacity. (R. 661.) The ALJ gave Ms. Masching's opinion no weight, because she had "last [seen] the claimant one year prior to the date of the opinion," and "she had a minimal treatment history with the claimant." (R. 20.)

Additionally, Ms. Kennedy also opined that Plaintiff's "constant pain" would preclude him from working in a competitive environment, and he would need to be absent from work approximately three times per month. The ALJ gave Ms. Kennedy's opinion no weight because she did not assess Plaintiff's "specific work-related abilities and limitations," and did not identify any medical findings supporting her opinion. (*Id.*) The ALJ also found that Ms. Kennedy's own treatment notes did not support her opinion, because they were mostly "referrals to specialists and contain[ed] few examination findings." (*Id.*) The ALJ additionally noted that Ms. Kennedy was not "an acceptable medical source." (*Id.*)

Finally, the ALJ considered several opinions provided by Dr. Goldberg. First, the ALJ considered Dr. Goldberg's post-surgery findings that Plaintiff could not lift more than 10 pounds. The ALJ found that such an opinion was reasonable but only for the period immediately following Plaintiff's spinal surgery in 2011. The ALJ also examined Dr. Goldberg's January 2012 finding

5

that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, with no repetitive bending or twisting at the waist, and Dr. Goldberg's findings in February 2012 and May 2012 that Plaintiff could lift additional weight and had reached maximum medical improvement. (R. 20-21.) The ALJ gave greater weight to the January 2012 opinion because it was consistent with the contemporaneous functional capacity assessment, as well as the later evidence in 2014 showing an increase in Plaintiff's back pain. (R. 21.)

### III.    ALJ Opinion and Procedural History

Plaintiff filed his application for disability insurance benefits on February 10, 2014, alleging a disability onset date of January 1, 2011. (R. 10.) The claim was denied initially on May 27, 2014, and upon reconsideration October 9, 2014. (*Id*.) Plaintiff requested an administrative hearing before an ALJ, which was held on February 3, 2016. (*Id*.) On October 15, 2015, ALJ Karen Sayon issued her opinion finding that Plaintiff was not disabled. (R. 10-23.)

In her decision, the ALJ found that: (1) Plaintiff met the insured status requirement of the Social Security Act through December 31, 2015; (2) Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2011; (3) Plaintiff had a severe impairments in the form of degenerative disc disease of the lumbar spine with stenosis and sacroiliac joint dysfunction; (4) Plaintiff's impairment did not meet the severity listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526); (5) Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: Plaintiff could not climb ladders, ropes, or scaffolds, only occasionally stoop, crouch, or climbs ramps and stairs, could frequently crawl, kneel, and balance, and could not tolerate concentrated exposure to hazards; (6) Plaintiff was incapable of performing past relevant work as a bricklayer; (7) there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform; and (8) Plaintiff had

not been under disability, as defined in the Social Security Act from January 1, 2011 through the date of the ALJ's decision. (R. 10-23.) The Appeals Council denied review on November 15, 2016, thereby rendering the ALJ's decision as final for the agency. (R. 1-6.)

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether Plaintiff is disabled as set forth in the Social Security Act, if it is supported by substantial evidence, and if it is free of legal error. *See* 20 C.F.R §§ 404.1520(a), 416.920(a); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This standard is satisfied even if the ALJ makes only a "minimal[] articulat[ion of his] justification." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## DISCUSSION

The Plaintiff raises the following issues on appeal: 1) the ALJ failed to properly assess the "paragraph B" criteria; 2 the ALJ's RFC assessment did not consider all of Plaintiff's physical limitations in combination; 3) the ALJ made a flawed credibility finding; and 4) the ALJ did not properly weigh opinion evidence. As discussed herein, the Court rejects each of these arguments and affirms the ALJ's decision.

### I. Paragraph B Criteria

The ALJ adequately supported her findings on the so-called "Paragraph B" criteria, and they are based on substantial evidence in the record. In order to meet the listings for certain mental health impairments, a claimant must show that he suffers from one of the symptoms listed in Paragraph A of the listing, and also demonstrate at least two of the following Paragraph B criteria: 1) marked restriction in activities of daily living ("ADLs"); 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4)

repeated episodes of decompensation, each of extended duration. 20 C.F.R. 404, Subpart P, App. 1, §§ 12.04, 12.06.

At Plaintiff's psychological consultative examination, Plaintiff was found to suffer from dysthymia and "mood disorder associated with chronic pain." (R. 478.) The ALJ found that Plaintiff had mild restrictions in ADLs, noting that most of Plaintiff's reported difficulties in this domain pertained to Plaintiff's physical pain, and were not associated with any mental health issues. (R. 13.) In his brief, the Plaintiff argues that this was error because the ALJ had "accepted Plaintiff's lay opinion on the reason for his limitations, but…rejected his testimony otherwise." (Dkt. 12 at 9.) Notably, the Plaintiff does not point to any mental health treatment records or any other citation in the administrative record to support the conclusion that Plaintiff's troubles with ADLs were the result of a mental impairment and not due to his back pain. That is because no such records exist, so far as the Court can tell. It is unclear what the ALJ should have used to reach a different conclusion. As such, the Court does not find that the ALJ's finding in this domain was in error.

The ALJ found that the Plaintiff had mild difficulties with social functioning. (R. 13.) The ALJ noted that Plaintiff reported that that he went to church regularly but did not socialize with anyone outside of his immediate family. (*Id*.) The ALJ also noted that the Plaintiff presented as "polite and cooperative" during the psychological examination. (*Id*.) Once again, the Plaintiff fails to point to any evidence in the record that supports a finding other that the one the ALJ ultimately reached. There are no mental health treatment documents in the administrative record other than the consultative examination that would support any other finding. It is the claimant's burden to show that he meets the Paragraph B criteria. *See Hamilton v. Colvin*, 2015 WL 536127, at *8 (N.D. Ill. Feb. 9, 2015). The Plaintiff must do more than simply disagree with the ALJ's finding for this Court to reverse her decision; he must point to some evidence in the record that would support an

alternate finding. He has not done so, and the Court does not find that the ALJ's finding in this domain was incorrect.

The ALJ also found that Plaintiff did not have repeated episodes of decompensation. Episodes of decompensation "may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation" and "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (*e.g.*, hospitalizations, placement in a halfway house, or a highly structured and directing household)." *Green v. Colvin*, 2016 WL 128134, at *3 (N.D. Ill. Jan. 12, 2016) (citing 20 C.F.R. 404, Subpart P, App. 1, § 12.00). Repeated episodes of decompensation means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.* There are no documented episodes of decompensation in the record, and Plaintiff's brief does not appear to argue that any exist. Therefore, the Court affirms the ALJ's finding on this front as well.

As noted above, the Plaintiff must satisfy two of the Paragraph B criteria. Because the ALJ's findings on ADLs, social functioning, and episodes of decompensation were supported by substantial evidence, the Court need not reach the criterion of marked limitations in concentration, persistence, or pace. The ALJ properly supported her Paragraph B findings, and the Court affirms the ALJ's decision.

## II. Limitations in the RFC Finding

Plaintiff also argues that the ALJ erred by failing to take into account Plaintiff's shoulder injury. The ALJ's decision is supported by substantial evidence. The record shows that Plaintiff had a shoulder surgery in January 2014, and then reported that he was no longer experiencing pain in his shoulder one month later (a fact that was conspicuously omitted from Plaintiff's brief). (R. 292.) There is no evidence that Plaintiff continues to have lingering or residual problems with

9

his left shoulder. The ALJ's decision not to include any RFC limitations relating to the Plaintiff's prior right shoulder injury is supported by substantial evidence, and the Court will not overturn that decision.

## III. Credibility Finding

The Court will not disturb the ALJ's credibility finding. An ALJ's credibility finding is afforded "considerable deference" on review and may only be overturned if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported…can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 16.) The ALJ then listed the entirety of Plaintiff's fairly lengthy treatment history before concluding:

> I have considered the other factors discussed in SSR 96-7p in evaluating the intensity, persistence and limiting effects of the claimant's symptoms. As indicated above, the medical records show a gap in treatment of approximately one year. At the hearing, the claimant explained this gap by stating that he was stubborn and waiting for his back to heal. However, the record shows that the claimant sought treatment for other impairments and that he eventually sought further treatment for back and hip pain. Further, the evidence shows that prior to this gap, he was functioning well. There has been minimal use of medications. Contrary to his allegations, he responded well to back surgery. He further presented with extreme allegations that simply are not supported by the objective findings and testing.

(R. 19.)

The Court believes that the ALJ made a supportable determination that Plaintiff's alleged symptoms were not credible in light of the medical record. Although the Court may have reached a different conclusion considering Plaintiff's multiple back surgeries, the Court is required to show significant deference in credibility determinations, and cannot say here that the findings by the

10

ALJ were unreasonable or unsupported.

Plaintiff raises several concerns with the ALJ's credibility finding: 1) the ALJ improperly relied on Plaintiff's improvement and eventual "maximum medical improvement" after his 2011 back surgery; 2) the ALJ failed to consider the relevance of Plaintiff's 2014 back surgery and lingering pain afterwards; 3) the ALJ drew an impermissible inference from the fact that Plaintiff sought treatment for his hip and shoulder, but did not complain about back pain; and 4) the ALJ should not have relied on the Plaintiff's lack of mental health treatment records. Regarding the first issue, the Court believes that ALJ's findings were supported by the record. The records indicate that Plaintiff had great improvement following his surgery. While the Plaintiff is correct that "maximum medical improvement" does not necessarily mean that a claimant will be able to work, in this specific case the finding of maximum medical improvement was accompanied by Dr. Goldberg's opinion that Plaintiff could return to work at a medium exertional level. It was appropriate for the ALJ to cite these findings as evidence that Plaintiff's complaints of disabling pain were not credible.

As for Plaintiff's second back surgery in 2014, the ALJ determined that the record indicated that Plaintiff responded well to the surgery. This finding is supported by the surgeon's finding that Plaintiff's pain was "clearly better," as discussed above. The Court recognizes that there are other medical records that contradict this finding, including Plaintiff's physical therapy records, but cannot say that the ALJ's finding here was unreasonable or not supported by the record.

The Plaintiff does not elaborate why the ALJ's reliance on Plaintiff's silence on his back pain while seeking out treatment for his shoulder and hip ailments is not warranted. The Plaintiff has also not pointed to any citation in the record that would suggest that Plaintiff's back was, in fact, bothering him at that time. It was during a lull in Plaintiff's treatment for back issues, following a surgery from which Plaintiff had recovered well enough to be cleared to return to work

11

by his treating back surgeon. The Court believes it reasonable to infer that this suggests that if Plaintiff's back was bothering him at the time, he would have mentioned it while seeking treatment for his other problems. While the inverse is also true (*i.e.*, Plaintiff might not have mentioned lingering back pain while seeking medical attention for his should and/or hip), the question before this Court is whether the ALJ made a reasonable finding. The Court believes that the ALJ did so, and will not overturn her finding on this basis.

Finally, Plaintiff argues that Plaintiff's lack of mental health treatment should not be held against him. To support this argument, Plaintiff posits that "[i]t may not have occurred to Plaintiff – distracted as he was by severe physical impairments as well as mental limitations – to seek specialized treatment from a mental health professional." (Dkt. 12 at 13.) Although this might be true, there is no evidence in the record or testimony from Plaintiff to support this hypothesis. Plaintiff has offered no alternative reason for why he did not seek mental health treatment. While a lack of severe mental health impairments is not the only supportable conclusion that one can reach from a failure to seek treatment, it certainly is *one* of the supportable conclusions, provided that other potential explanations proffered by the Plaintiff or available in the medical record are considered by the ALJ. In this case no other explanations were provided by the Plaintiff in the record, until the *ex post facto* conjecture quoted above. This is not sufficient to overturn the ALJ's credibility finding. In sum, the Court cannot say that the ALJ's credibility finding was unreasonable, and will not reverse the ALJ on that issue.

IV.     **The ALJ Properly Weighed Opinion Evidence**

Plaintiff attacks the ALJ's treatment of opinion evidence. Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 416.927(c). Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long

as it is supported by medical findings and is not inconsistent with other substantial evidence in the record.[2] 20 C.F.R. § 416.927(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel*, 227 F.3d at 870. An ALJ must provide "good reasons" for how much weight she gives to a treating source's medical opinion. *See Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our…decisions for the weight we give your treating source's opinion."). When an ALJ decides for "good reasons" not to give controlling weight to a treating physician's opinion, she must determine what weight to give to it and other available medical opinions in accordance with a series of factors, including the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the supportability of the opinion; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 416.927(c)(2)-(6). An ALJ must provide "sound explanation" for the weight she gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If she does not discuss each factor explicitly, the ALJ should demonstrate that she is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

However, medical opinions are defined as coming from "acceptable medical sources." 20 C.F.R. § 416.927(a)(1). Therefore, when an opinion comes from a source other than an "acceptable medical source," it is not a "medical opinion" for purposes of the treating physician rule, and need not be entitled to controlling weight absent "good reasons." *See* 20 C.F.R. § 416.927(c). When an opinion is provided by a medical source who is not an "acceptable medical source," the ALJ must still consider the opinion, but does not necessarily need to consider every factor discussed above.

---

[2] A recent change to the Administration's regulation regarding weighing opinion evidence will eliminate this rule, commonly known as the "treating physician rule," for new claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this appeal, however, the prior version of the regulation applies.

13

20 C.F.R. § 416.927(f)(1). "The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 416.927(f)(2).

Regarding, Ms. Masching (Plaintiff's physical therapist) and Ms. Kennedy (Plaintiff's family nurse practitioner), they are not "acceptable medical sources." *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016); *Zblewski v. Astrue*, 302 Fed. Appx. 488, 493 (7th Cir. 2008). The Court believes that the ALJ adequately explained the weight she afforded to these two opinions in a way that allows the court to follow her reasoning. Regarding Ms. Masching, the ALJ relied on her relatively sparse treatment record with Plaintiff and her reliance on his subjective complaints alone to support her decision to give her opinion no weight. As for Ms. Kennedy, the ALJ found that her opinion was contradicted by her own treatment notes and lacked citation to medical findings supporting her opinion, before deciding to give her opinion no weight. Again, while this Court might not have assigned no weight to the opinions of these medical professionals, the ALJ followed the requirements of the applicable regulations and had substantial evidence to back up her decisions. As such, the Court cannot find that the ALJ's weighing of this opinion evidence constitutes reversible error.

Finally, Plaintiff attacks the ALJ's treatment of Dr. Goldberg's opinions as illogical. The Court disagrees. The ALJ found that Dr. Goldberg's original opinion that Plaintiff could lift no more than ten pounds was reasonable, but only for the period immediately following surgery. This makes sense, and is borne out by subsequent treatment with Dr. Goldberg showing improvement in Plaintiff's condition and an increasing ability to tolerate more strenuous work. Next, the ALJ gave greater weight to Dr. Goldberg's January 2012 opinion that Plaintiff could lift a maximum of 20 pounds and frequently lift ten pounds, than to Dr. Goldberg's later opinions in February and

May 2012 that Plaintiff could lift and carry a maximum of 70 pounds. (R. 20-21.) The ALJ supported her decision by noting that Plaintiff showed increased back pain in 2014, which would suggest that Dr. Goldberg's more restrictive January 2012 opinion would most accurately reflect the Plaintiff's abilities during the relevant time period. This does not "def[y] logic," as Plaintiff suggests, and fits within the ALJ discretion to consider all evidence in the record. (Dkt. 12 at 15.) In fact, outside of the period shortly following the surgery that Dr. Goldberg performed, the opinion that the ALJ found most reliable from Dr. Goldberg was the one that was most favorable to Plaintiff. The Court believes that the ALJ adequately explained her reasoning for assigning weight to Dr. Goldberg's opinion, and will not reverse on this basis.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion is denied [dkt. 11], the Commissioner's motion is granted [dkt. 20], and the Administrative Law Judge's decision is affirmed.

ENTER: 7/25/18

_____
U.S. Magistrate Judge, Susan E. Cox